IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ANNE WARR, on behalf of herself and all others similarly situated, | ) ) C.A. No. 4:99-1581-CMC |
| | ) C.A. No. 4:00-2002-CMC |
| Plaintiff, | ) |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) **DENYING MOTION FOR PRELIMINARY** |
| PHYSICIANS HEALTH PLAN OF SOUTH CAROLINA, INC., | ) **APPROVAL OF CLASS ACTION SETTLEMENT** |
| | ) |
| Defendant. | ) |

These actions are before the court on Plaintiff's motion for preliminary approval of a class action settlement which would resolve both related actions. The agreement to settle these actions was reached while the actions were on appeal.[1] Upon notice of the settlements, the Fourth Circuit Court of Appeal, remanded the actions to this court "for consideration of a proposed settlement and class certification." Order entered May 14, 2004 by the Fourth Circuit Court of Appeals.

The motion for preliminary approval of the class action settlement was filed on December 29, 2004. The following documents were filed in support of the motion: (1) "Conditional Stipulation of Class Settlement" ("Tab 1 (Stipulation)"); (2) a proposed "Order with Respect to Class Certification, Notice, Hearing and Administration of Class Action Settlement" ("Exhibit A (Proposed Implementing Order)"); (3) a proposed notice to be mailed to class members entitled "Notice of Class Action Determination, Settlement of Class Action, and Settlement Hearing" ("Tab B (Notice for Mailing)"); (4) a proposed notice to be published on one occasion in one newspaper

---

[1] From information provided during a teleconference between counsel and chambers' staff, it appears that the proposed settlement of these actions was reached at or near the same time as and in conjunction with settlement of a number of similar actions pending in other jurisdictions.

in general circulation within the state ("Tab C (Notice for Publication)"); and a proposed final order approving the settlement ("Tab D (Proposed Final Order)"). Defendant has taken no position as to whether the court should approve the settlement although it is, of course, a signatory to the Conditional Stipulation of Class Settlement.

For the reasons set forth below, the court finds the documentation inadequate to support either certification of a settlement class or preliminary approval of the class action settlement. The courts concerns relate both to the substance and form of the settlement and documentation. The court does not, however, preclude the possibility that these deficiencies can be cured. The court, therefore, denies the motions without prejudice to refiling within ninety days of entry of this order. The deficiencies in the current submissions are summarized below.

**Procedural History.** The earlier of these two actions (C.A. No. 4:99-1581), which raised claims under the Racketeering and Corrupt Organization Act, was filed in May 1999. It was dismissed by the undersigned in November of the same year based on a July 1999 motion to dismiss. A notice of appeal was filed on December 6, 1999.

The second action, which raised claims under the Employee Retirement Income Security Act, was filed in June 2000, and was initially assigned to the undersigned. Defendant's answer was filed in September 2000, together with a motion for summary judgment. Shortly thereafter, the case was reassigned to The Honorable C. Weston Houck, United States District Judge. Briefing on Defendant's motion for summary judgment continued through December 2000. That motion was still open when Plaintiff filed a cross motion for summary judgment in February 2001, and a motion for class certification in March 2001. Defendant's motion for summary judgment was granted by order entered January 16, 2003. The same order ruled both Plaintiff's motion for summary judgment

and motion for class certification moot. A notice of appeal was filed on February 11, 2003. On remand, both actions were assigned to the undersigned.

**Class Certification.** At the time of remand, no class had been certified in either of the present actions, although a motion for certification of a litigation class had been filed in the later filed action. Preliminary approval of the class settlement, therefore, requires this court to make preliminary findings that the actions are suitable for certification as a settlement class. *See generally Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (noting that class certification in the settlement context demands undiluted, even heightened attention to unwarranted or overbroad class definitions); *Manual for Complex Litigation, Fourth*, § 21.132 (Federal Judicial Center 2004) (hereinafter "MCL 4th").

The parties have not, however, presented the court with any evidentiary basis for approval of class certification. Neither have the parties provided any motion or memorandum addressing the relevant class certification factors. The Proposed Implementing Order is, likewise, silent as to class certification other than setting forth definitions of two sub-classes.

Any refiled motion for preliminary approval of the settlement shall, therefore, address the relevant criteria for class certification including those applicable to the particular subsection of Rule 23(b) under which certification is sought. Particular attention should be given to the risk for intraclass conflict between Entitled Class Members who stand to gain some benefit from the recovery and those who will receive nothing as a result of this settlement.[2]

---

[2] "Entitled Class Members" are those whose "Gross Distribution Amount" is at least ten dollars. *See* Exhibit B (proposed mailed notice) p. 8 ¶ 14(a). Gross Distribution Amount is determined by comparing the copayments actually made by the class member to the copayments which Plaintiff alleges they should have paid. *Id.* (it is not clear if or how benefit maxima is figured into this formula). This calculation is to be made by Plaintiff's expert, presumably based on

Any refiled motion should also provide authority for the presumption that the court can find a settlement fair to the non-Entitled Class Members given that the court is aware that these individuals will be required to give up rights for no potential gain. This is a particular concern given that it appears that these individuals might be subject to identification in advance of the sending of notice. *See supra* n.2 (defining "Entitled Class Member"). If this is true, the better course may be to avoid the conflict and related concern regarding lack of benefit by redefining the class to exclude these individuals.[3]

Any refiled motion shall also address the criteria necessary for appointment of class counsel. *See* Fed. R. Civ. P. 23(g); MCL 4th § 21.27. Appropriate evidentiary support for any findings should be submitted contemporaneously.

A proposed order addressing all relevant criteria both for class certification and appointment of class counsel should be included. The proposed order should contain appropriate proposed findings with specific reference to record evidence. If counsel are aware of similar settlement (or litigation) classes having been approved by other courts (state or federal), that information should

---

information already in counsel's possession. The only suggestion that there may be some presently-unknown factor to be considered is the reference to a reduction for "attorney's fees and expenses" within these calculations. Presumably, the exact amount cannot be known until all expenses are tallied and the court authorizes a fee award. It is not, however, clear why such a reduction would be made in calculating the Gross Distribution Amount. This is particularly so given that the amount actually payable is reduced by a factor which accounts for any payments of fees and expenses authorized by the court. *See id.* ¶ 14(c). If, in fact, such a reduction is to be made in determining who may be a Entitled Class Member (in addition to in allocating a share of the net settlement), then the basis for including this reduction (in both places) needs to be explained more fully.

[3] Defendant is likely to see a disadvantage in narrowing the class of persons precluded from later suit by such a narrowing of the class definition. Only Defendant can decide whether the detriment is sufficient to abort the settlement. The court, on the other hand, is required to insure that the class is without substantial conflicts and that the settlement is fair to the entire class, not to some segment of the class at the expense of some other segment.

4

be provided along with appropriate supporting documents and any other information necessary to compare the approved classes to the class proposed in this action.

To make the notices more easily understood, counsel may also want to consider setting forth the sub-class definitions in a more readable format. This might include use of internal numbers or bullet points.[4] Counsel should also consider whether the requirement that class members be "adversely affected" should not be stated in another form (or at least be defined)[5] to avoid ambiguity as to who is covered by the class definition. *See generally* MCL 4th § 21.222 (stating that class "definition must be precise, objective and presently ascertainable" and "should avoid subjective standards . . . or terms that depend on resolution of the merits").

Counsel should also consider whether the exclusions from the class are adequate. The only presently stated exclusions are for officers or employees of Defendant or an associated entity. There is no exclusion for persons who opt-out. Such an exclusion may be implicit but is not expressly stated. Neither is there any exclusion for persons who have instituted their own litigation prior to the date of any preliminary approval order.[6]

---

[4] The court is not requiring such a format, but believes it may make the definition more comprehensible to class members. Alternatively, it may be that this format could be used in the notice, along with a more traditionally formatted definition.

[5] This is a critical term which does not appear to be defined and may include an impermissible subjective component. *See* Tab 1 (Stipulation) p. 3 ¶ E (using term in defining sub-classes) & p. 9 ¶ 7 (explaining calculation as including a determination by "Plaintiff's expert Charles DeWeese . . . [of those] Class Members *who he believes were adversely affected* by Defendant's practices"); Exhibit A (Proposed Implementing Order) p.2 ¶ 2 (using term in defining sub-classes; Exhibit B (Notice for Mailing) pp. 7-8 ¶ 14 (using term in describing how entitlement to benefits will be calculated).

[6] Counsel should also inform the court if they are aware of any such litigation. This is one of the factors the court should consider in deciding whether to certify a class.

**Related Ambiguity Concern.** The sub-class definitions (and related requirements for exclusion) also raise ambiguity concerns that need to be resolved. These concerns arise from the fact that the class is defined so that multiple individuals ("beneficiaries" in ERISA terminology) may have claims arising from a single policy or through a single individual ("participant" in ERISA terminology). For example, an employee may have family coverage under an ERISA plan which may have paid claims on behalf of a number of adults and children (employee, spouse, certain adult children, and minor children). As the court reads the sub-class definitions, each of these individuals is a distinct member of the class. If this is the intent, it would be helpful to clarify it in the notice and related documents. If it is not the intent, then the class definition needs to be modified.

The documentation should also clarify to whom settlement proceeds will be paid when there are multiple class members (beneficiaries) claiming *through* a single named-insured or participant. In most cases, there may be no real dispute as to who should receive the proceeds or, if entitlement is calculated jointly, proceeds might be paid jointly, but there remains a risk of conflicts between "related" class members.[7] To the extent payments were made by one individual on behalf of another, there may also be standing concerns, though these may be alleviated in the settlement context absent disputes between class members.

This same concern requires clarification as to how distribution calculations will be made. That is, is Entitled Class Member status to be determined based on the combined or individual co-payments for all class members who received benefits through a single named insured or participant?

---

[7] Parents will, for instance, normally have paid co-payments on behalf of covered children. In that instance, will the settlement distribution be paid to the parent or child? How will such claims be handled if the class member was a child when the co-payment was made but is now an adult? This will be a common circumstance given the years covered by the class period–1991-1995. There is, likewise, a risk for dispute between spouses, particularly if that status has changed.

6

The answer to this question could make a significant difference in the number of class members who are determined to be Entitled Class Members.

These participant-beneficiary issues also point to a need for clarification of the requirements for opting out. There is some allusion in the documents to a need for multiple signatures (and signatures by parents on behalf of children) on any requests for exclusion or objections. Whether multiple signatures are required if multiple individuals were covered through the same participant or named insured is not, however, clear. *See* Exhibit B (Notice for Mailing) p. 6 ¶ 11. The instructions in the notice and any corresponding opt-out or objection forms should, therefore, clarify whose signatures are required and under what circumstances (*e.g.,* whether exclusion requires unanimity of multiple beneficiaries claiming through a single participant).[8]

There are corresponding concerns relating to whether the notice will be directed to the named-insured or participant or to each individual who was covered under the plan or policy. Each of these matters needs to be considered and addressed.

**Fairness.** The record is, likewise, inadequate to allow the court to determine whether the settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(C) (requirements for approval of settlement).[9] Similarly, there is inadequate information in the collective documents and notice to allow a putative class members to make an informed decision as to whether they should remain

---

[8] A requirement for individual signatures would be consistent with the current class definition, as understood by the court: each beneficiary having a distinct right to recovery. Any requirement for unanimity would, however, appear to be inconsistent with this individualized treatment.

[9] The burden of proving that a settlement is fair, reasonable and adequate rests on the proponents of the settlement, and there is no presumption to aid them in meeting this burden. Newberg and Conte, 1 *Newberg on Class Actions,* § 11.42 at 11-93 (3rd Ed. 1993).

in the class. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950) (stating that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

All the court can determine at this point is that some class members will receive nothing in exchange for giving up their rights to bring individual actions (class members who do not qualify as "Entitled Class Members") and that there will likely be a relatively small amount available for distribution to those who do receive a benefit. The latter conclusion is based on the fact that the total settlement of $235,979.20 is to be reduced by: (1) an anticipated request for attorneys' fees in the amount of $78,659; (2) a request to pay the named Plaintiff $5,000 for her involvement and assistance; (3) Plaintiff's unspecified costs incurred to date; and (4) unestimated future costs for publication of notices and calculation and distribution of whatever funds may be left for distribution to Entitled Class Members. The court and class are provided no information as to how the total amount to be paid was calculated or how it compares to the proposed class' claimed actual damages. Neither do the current submissions provide information as to how many class members there may be or how many are likely to be found to be "Entitled Class Members." All of this information (including estimates of future expenses) is necessary for the court and class members to evaluate whether the settlement is fair, reasonable, and adequate.

That class members may receive only a small benefit does not, of course, mean that the settlement does not meet the above standard. This may be particularly true in the present case given the procedural history of these actions and stage of the proceedings at the time of settlement. The arguably limited benefit is, however, an important consideration both for the preliminary fairness determination and for purposes of approving class counsel's application for attorneys' fees. The fee

application may be a particular concern in this case because the Stipulation itself recites proposed attorneys' fees to be paid not by the opposing party, but out of the proceeds otherwise payable to the class. *See infra* Attorneys' Fees.

At this stage in the proceedings, the court can assume that Defendant, the named Plaintiff, and Plaintiff's counsel all perceive a benefit in settling the action for the amount proposed. It is the court's duty, however, to insure that the settlement is fair to the remaining class members. *See* MCL 4th § 21.612 ("Class actions certified solely for settlement, particularly early in the case, sometimes make meaningful judicial review more difficult and more important. Courts have held that approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process.").[10] The court cannot fulfill this duty without some reasonable means of evaluating the benefit class members are likely to receive, both collectively and individually, and balancing that against their claimed damages and obstacles to recovery. Further, part of fairness is insuring that the putative class members have adequate information to evaluate the relative risks and benefits for themselves.

---

[10] Although no class has been certified in this case, there have been significant adversarial proceedings. Thus, the prior proceedings lessen or eliminate any concern that the actions were brought collusively. This does not, however, end the inquiry as the court retains an obligation to insure that the settlement is fair to the class. This concern is heightened where, as here, the settlement agreement suggests that putative class counsel has "negotiated" with Defendant for a fee to be paid entirely by the class. Regardless of the propriety of such negotiations, they require heightened scrutiny of the entire settlement agreement. *See generally Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir. 2003) ("concerns about the fairness of settlement agreements warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement"–citations and internal quotations omitted); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 284, 333 (3rd Cir. 1998) ("the court must always be mindful of the danger that the lawyers might urge a class settlement at a lower figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees"–citations and internal quotations omitted).

The record and proposed notices are inadequate for any of these purposes.[11]

**Attorneys' Fees.**

As noted above, the amount of attorneys' fees to be sought by Plaintiff's counsel is set forth in the Stipulation. This raises serious concerns. It is certainly not improper for Defendant to insist that the settlement documents make clear that Defendant shall not be liable under the settlement for any additional fees and expenses. *E.g., Ayers v. Thompson*, 358 F.3d 356 (3d Cir. 2004). The problem here is the specification of an amount which is to be paid from a fund over which Defendant has no interest once the total amount to be paid is determined. *See supra* n. 10.

Because the fee is to be paid from the amounts otherwise available for distribution to the class, the fee award is a matter as to which the class and counsel have differing interests. Defendant, by contrast, has no interest in the amount to be allocated to fees beyond insulating itself from the risk of being held liable for additional sums. *See Weinberger v. Great Nekoosa Corp.,* 925 F.2d 518, 524-25 (1st Cir. 1991) (noting, in addressing propriety of a "clear sailing agreement," that when fees are negotiated between class counsel and a defendant it "exacerbate[s] the potential for conflict between the plaintiff class and class counsel").[12] Under these circumstances, this court will not

---

[11] As noted in the preceding section of this order, the manner in which benefits to be paid to Entitled Class Members is to be calculated is not clear. *See supra* n.2 (discussing concern with apparent dual reduction for attorneys' fees both in calculating the Gross Distribution Amount and in determining a post fee and expense share of the Net Settlement Award). This apparent dual reduction either needs to corrected or explained.

[12] Although the *Weinberger* court was addressing actions in which the fee would be paid by Defendant (not from a common fund), it recognized that the concerns were most keenly felt when the fee would come from the class coffers: "While the conflict between a class and its attorneys may be most stark where a common fund is created and the fee award comes out of, and thus directly reduces, the class recovery, there is also a conflict inherent in cases like this one, where fees are paid by a quondam adversary from its own funds-the danger being that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Id*.

approve a settlement that sets forth a specific amount of fees to be awarded, even if stated as subject to court approval. The settlement must be one which Plaintiff's counsel is willing to accept without any assurance of payment of fees of any particular amount.

At the same time, the stipulation may and the notice must set a maximum amount of fees which may be sought.[13] Likewise, the notice should provide the class with information as to known and estimated expenses to be paid from the settlement fund. Plaintiff's counsel should also file a proper application for fees and expenses to date along with future expense estimates. The application for payment of fees should include appropriate detail allowing the court to calculate an alternative lodestar amount and should be filed prior to distribution of any notices.[14] The notices should inform the class members that the application has been filed and the fee application should be among the documents which are made available to class members upon request either from class counsel or though the court's website.

**Notices –Content.** As indicated above, the notices do not contain adequate information to allow class members to properly evaluate the risks and benefits of remaining in the class.

---

[13] The court is inclined to limit any fee award to not more than the total amount available for distribution to the class after reduction for all costs and expenses other than attorneys' fees. This would insure that class counsel does not receive a disproportionate amount of any settlement. *See generally Attorney Grievance Commonwealth of Maryland v. Kuroki,* 569 A.2d 1224, 1233 (Md 1990) (stating in a non-class action context that "[w]ithout passing upon whether there can ever be circumstances justifying a contingent fee in excess of fifty percent, it is generally a violation of the rule for the attorney's stake in the result to exceed the client's stake"). If the court decides to impose such a limit, it will be included in any approved notice.

[14] Because the present action was apparently one of a series of related actions which were settled in or near the same time, the court requests that this submission summarize the fee application and award information from related actions by providing: the total settlement amount; the fee sought; the net settlement estimated or determined to be available for distribution, the number of class members, and the fee ultimately approved.

Instructions to putative class members, including as to how to opt out or remain in the class but object are, likewise, not clear.[15] In some cases, the requirements appear to be unduly onerous.[16] Other information is unnecessarily confusing, including the use of two different court addresses for the sending of notices and hearing.[17]

Counsel may also wish to utilize the court's website for posting those filed documents which may be of greatest interest to class members (*e.g.,* Stipulation of Settlement and any amendments thereto; Implementation Order; attorneys' fee and expense application; and any mailed or published notices and related forms). If the later is desired, the directive to post specified documents on the court's website should be included in the proposed order as a directive to the Clerk of Court.

Plaintiff's counsel should also modify the notice to facilitate easier communication between

---

[15] This is particularly true as to any multiple related class members (beneficiaries) claiming though a single participant or named insured. *See supra* Related Ambiguity Concern.

[16] For example, one portion of the notice implies that class members must have counsel to file an objection. This is not the case. Neither should the notice of intent to object require more than an outline of the grounds for objecting, although a full brief is preferred and generally provided when objections are filed by counsel. The obligation to serve objections on both Plaintiff's counsel and Defendant's counsel, in addition to filing the objection with the court, may also be unnecessarily onerous, particularly as filing with the court will result in electronic notice of the filing being sent to counsel (if registered as a Filing User or Pro Hac Vice Participant under the court's Electronic Case Filing system). The particular manner in which the addresses are set out (two in block form and one in a text string) also make it more likely that an objector would miss one of the three steps required. The notice also fails to provide an opt-out form. Such a form should be included and should repeat all necessary instructions for seeking exclusion. In short, the notice and any attachments should facilitate, not discourage, class members' exercise of their rights to opt out or object.

[17] Absent a reason why this location would not be suitable, the final approval hearing will be held in the Matthew J. Perry, Jr. Courthouse in Columbia, South Carolina, where the undersigned's chambers are located. The same address should be given for mailing of documents. On the other hand, class members should be advised that they may access all filed documents in these cases at any of the court's divisional offices, through PACER, or by contacting Plaintiff's counsel.

class members and counsel. Class members are told that their "[q]uestions may . . . be addressed" to Plaintiff's out-of- state attorney. The only contact information given is a street address. This is despite the fact that the class consists primarily, if not solely, of South Carolina residents. The same address is given for "hand delivery" of opt-out notices or objections. This is simply not adequate. If a hand-delivery address is to be given, class members should be provided with an address within the state. Class members should also be provided with a reasonable means for posing inquiries, such as a phone number (in-state or toll free) and e-mail address and counsel should be in a position to promptly and fully respond to whatever settlement related inquiries are posed.

The concerns with the mail-only contact information are exacerbated by the very short period allowed for objections: thirty-five days between sending of notice and time for objection. This leaves little time for the prior formulation and exchange of letters that is necessarily intended given that only an address is provided.[18] Indeed, even with better access to Plaintiff's counsel, thirty-five days would not be enough. Class members need time to examine the documents, make inquiries of Plaintiff's counsel, confer with independent counsel and, if they deem appropriate, formulate and file objections. Between sixty and ninety days should be allowed for this process.

There are other, arguably lesser, concerns with the notice and related documents. The court will not endeavor to address all of them in this order. Counsel should, however, be able to anticipate and resolve the concerns by redrafting the documents with an eye towards providing class members with adequate information to allow them to make an informed decision and to execute that decision

---

[18] As suggested above, however, the court is not inclined to approve a settlement and notice that do not afford class members a more direct and effective means of resolving their questions.

without unnecessary hardship.[19] Counsel should also anticipate what problems might arise (*e.g.,* disputes as to receipt date for opt-out forms) and provide adequate controls.[20]

**Notices – Method**. Plaintiff proposes to mail individual notices "by first class mail to the last known family address for each class member." Exhibit A (Proposed Implementing Order) p. 3 ¶ 3. From what information has been provided to the court through a teleconference with chambers staff, it appears *possible* that mailed notice may be adequate notice without *significant* additional publication. There is not, however, adequate record evidence to support this conclusion.

To cure this deficiency, any refiled motion should provide details as to how the class members have been identified (including whether it is by participant/named-insured group or at a beneficiary level), the currency of the address information, and how recent or current addresses are being obtained or confirmed.[21] Counsel should also address details of any plan for correcting addresses and resending notices which may be returned as undeliverable.

---

[19] The court can provide some samples of recently approved notices to Plaintiff's local counsel to aid in formulating notices which meet the court's requirements. Counsel is also directed to the Federal Judicial Center's website (http://www.fjc.gov/public/home.nsf) for guidance as to preparation of informative class action notices. In addition, counsel should review a recently published article which provides helpful guidance on the writing of class action notices: Todd B. Hillsee, Shannon R. Wheatman & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More than Just Plain Language: A Desire to Actually Inform*, 18 Geo. J. Legal Ethics Vol.1359 (2005).

[20] The notice does not, for instance, advise the class members as to how timeliness of mailing will be determined, such as that the post mark date will control. Further, because the forms are to be returned to Plaintiff's counsel as opposed to a third-party entity, the Implementing Order or an attached "notice plan" should detail Plaintiff's counsel's obligations in regard to receiving, maintaining, and compiling any received opt-out forms. Further, it would be the court's preference for these duties to be assigned to local counsel, thus providing an in-state address.

[21] Given the nature of the underlying benefits, it is likely that Social Security numbers are available for all persons falling within the sub-class definitions. If so, and if it is counsel's intent to locate or confirm addresses using Social Security numbers, then the addresses used are likely to be reliable and current. If, on the other hand, the "most recent family addresses" to which notices will be mailed are the addresses Defendant had at the close of the class period (1995), then address information is likely to be inaccurate for a large percentage if not majority of the class.

Adequate safeguards to ensure class members receive the individually mailed notices are particularly important in this case given the limited degree of published notice planned and the difficulty individuals who see the published notice are likely to have in determining whether they are class members. The later concern arises, in part, because of the inclusion of the "adversely affected" requirement which, even if defined in objective terms, may require information which class members do not have available to them.

The court is also concerned that the notice plans are inadequate to provide any significant notice by publication, given that the proposal is for a single publication in a single edition of The State newspaper. While the frequency (once) and content are specified, other details are not (*e.g,* there is no specification of the size, section, page or day of the week of publication). *See* Exhibit A (Proposed Implementing Order) p. 3 ¶ 3. On the other hand, it is possible that published notice is not necessary, presuming an adequate plan for mailed notices. Counsel should, therefore, provide support either for the premise that the planned notice by publication is adequate to reach any missed class members within the geographic region in which class members are likely to reside or that published notice is not necessary under the circumstances of this case.

Consideration should also be given to whether more frequent publication of a smaller, less detailed notice might not be more effective. Such a notice could direct the reader to more detailed information (*e.g.,* via contact with counsel or the court's website). Information as to the costs of the single publication in The State as well as costs of additional or alternative publication should also be provided so that the court can consider the relative costs and benefits of the alternatives.

As discussed above, the funds available for distribution are likely to be relatively small even without the expense of significant published notice. The court must, therefore, weigh the cost of

publication (and any other increased administrative expenses) against the reduction in the funds available to the class. At the same time, the court must insure adequate notice is given and the settlement proceeds are properly administered.

This brings the court to the ultimate concern with this proposed settlement, which is that the costs of providing adequate notice and administering the settlement may, together with the fees sought and expenses incurred to date, leave so little available for distribution to class members that the court will be unable to give preliminary approval to the settlement. Plaintiff will, however, be afforded a second opportunity to make an adequate showing of fairness in light of the concerns expressed in this order.

## CONCLUSION

For the reasons set forth above, the court denies the motion for preliminary approval of a class action settlement. Denial is without prejudice to refiling of a renewed motion within ninety days of the entry of this order. The present motion shall be deemed denied *with* prejudice if no renewed motion is filed within the allowed ninety days.

IT IS SO ORDERED.

S/ Cameron McGowan Currie<br>CAMERON MCGOWAN CURRIE<br>UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 22, 2005